### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY TALLEY** | **CIVIL ACTION** |
| **versus** | **NO. 08-3542** |
| **BURL CAIN, WARDEN** | **SECTION: "S" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Henry Talley, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On January 29, 1997, he was convicted of second-degree murder in violation of Louisiana law.[2]   On February 28, 1997, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  Petitioner's counsel gave oral notice of the intent to appeal at sentencing.[4]  For reasons not apparent from the face of the state court record, that appeal apparently did not proceed and, as a result, petitioner, through counsel, additionally filed a motion for an out-of-time appeal on August 21, 1997, which was granted.[5]  On November 17, 1999, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[6]  On January 26, 2001, the Louisiana Supreme Court denied his related writ application.[7]

On January 7, 2002, petitioner filed with the state district court an application for post-conviction relief.[8]  That application was denied October 9, 2002.[9]  Petitioner next filed with the

---

[2] State Rec., Vol. X of X, transcript of January 29, 1997, p. 178; State Rec., Vol. VIII of X, minute entry dated January 29, 1997.

[3] State Rec., Vol. IX of X, transcript of February 28, 1997, pp. 4-5; State Rec., Vol. VIII of X, minute entry dated February 28, 1997.

[4] State Rec., Vol. IX of X, transcript of February 28, 1997, p. 5.

[5] State Rec., Vol. VIII of X, minute entry dated August 21, 1997; State Rec., Vol. VIII of X, Motion for Out of Time Appeal.

[6] State v. Talley, 748 So.2d 1184 (La. App. 4th Cir. 1999) (No. 98-KA-0282); State Rec., Vol. VII of X.

[7] State v. Talley, 781 So.2d 1255 (La. 2001) (No. 2000-KO-0224); State Rec., Vol. VI of X.

[8] State Rec., Vol. VI of X.  That application is undated; however, in the related writ application filed with the Louisiana Supreme Court, petitioner alleged that the application was filed on January

Louisiana Fourth Circuit Court of Appeal a related writ application.  That application was granted in part and the matter was remanded for further proceedings.[10]  Petitioner then filed with the Louisiana Supreme Court a related writ application which was denied on January 16, 2004.[11]

The state district court held an evidentiary hearing in the remanded proceedings on January 16, 2004, and again denied post-conviction relief on January 23, 2004.[12]  Petitioner then filed with the Louisiana Fourth Circuit Court of Appeal a related writ application which was denied on January 6, 2005.[13]  On or about July 18, 2007, petitioner challenged that denial by filing with the Louisiana Supreme Court an untimely writ application which was denied on May 2, 2008.[14]

On May 15, 2008, petitioner filed the instant federal application for *habeas corpus* relief.  In support of his application, petitioner claims that he received ineffective assistance of

---

7, 2002.  For the purposes of this decision, the Court will accept that allegation as true.

[9] State Rec., Vol. VI of X, Judgment dated October 9, 2002.

[10] State v. Talley, No. 2002- K-2155 (La. App. 4th Cir. Nov. 27, 2002) (unpublished); State Rec., Vol. VI of X.

[11] State *ex rel.* Talley v. State, 864 So.2d 619 (La. 2004) (No. 2003-KH-0049); State Rec., Vol. I of X.

[12] State Rec., Vol. I of X, Judgment dated January 23, 2004; State Rec., Vol. I of X, transcript of January 23, 2004.

[13] State v. Talley, No. 2004-K-1794 (La. App. 4th Cir. Jan. 6, 2005) (unpublished); State Rec., Vol. VI of X.

[14] State *ex rel.* Talley v. State, 979 So.2d 1279 (La. 2008) (No. 2007-KH-1554); State Rec., Vol. VI of X.

counsel and that his federal constitutional rights were violated when the trial judge denied a motion

for mistrial.  The state argues that petitioner's federal application should be dismissed as untimely.[15]

Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally

requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

conviction or sentence becomes "final."  Under the AEDPA, a judgment is considered "final" upon

the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).[16]

In the instant case, the state argues that petitioner's conviction became final when he

failed to give timely notice of his intent to appeal after sentencing.  However, La.C.Cr.P. art. 914(A)

provides that a motion for appeal may be made orally in open court.  As previously noted,

petitioner's counsel gave oral notice of the intent to appeal at sentencing on February 28, 1997.[17]

Although a purported "out-of-time appeal" was also later granted, this Court is loath to penalize

petitioner by failing to give him the full benefit of the doubt on this issue, especially in light of the

timely oral notice of appeal, the ambiguities in the state court record, and the clear lack of

petitioner's fault with respect to any confusion on the part of the state courts regarding the appeal.

Therefore, based on the record before it and out of an abundance of caution, the Court finds that

petitioner's conviction became "final" for AEDPA purposes on April 26, 2001, when his ninety-day

---

[15]  Rec. Doc. 9.

[16]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger
the commencement of the statute of limitations, those alternative provisions are inapplicable in the
instant case.

[17]  State Rec., Vol. IX of X, transcript of February 28, 1997, p. 5.

period expired for seeking a writ of certiorari from the United States Supreme Court with respect to the Louisiana Supreme Court's judgment on direct appeal.  See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Berry v. Cain, Civ. Action No. 06-6749, 2008 WL 859250, at *3 (E.D. La. Oct. Mar. 28, 2008); see also U.S. Sup. Ct. R. 13(1).  Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).

Two hundred fifty-five (255) days of the limitations period elapsed prior to being tolled by the filing of the post-conviction application on January 7, 2002.  Although that application was denied, tolling continued uninterrupted for the duration of the post-conviction proceedings process, so long as petitioner sought review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

In this proceeding, the state correctly argues that statutory tolling ended upon the expiration of petitioner's thirty-day period for seeking timely review of the Louisiana Fourth Circuit Court of Appeal's judgment of January 6, 2005.  Id. at 770-71 ("[A] state application ceases to be pending when the time for appellate review expires."); Louisiana Supreme Court Rule X, § 5(a) (a litigant has only thirty days to file a writ application to challenge a judgment of a Louisiana

intermediate appellate court).  Accordingly, the Court finds that statutory tolling ceased on February 7, 2005.[18]

Although statutory tolling ceased, petitioner argues that a period of equitable tolling should commence at that point because he failed to receive timely notice of the Court of Appeal's judgment.  The United States Fifth Circuit Court of Appeals has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled.  See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).  Further, the Court of Appeals has expressly held that equitable tolling may be justified when a petitioner failed to receive notice of an adverse state court ruling.  Phillips v. Donnelly, 216 F.3d 508 (5th Cir.), *modified on partial reh'g on other grounds*, 223 F.3d 797 (5th Cir. 2000).

In Phillips, the petitioner alleged that he did not receive timely notice of the denial of his state *habeas* petition.  On February 5, 1997, Phillips had filed a state *habeas* application, which was denied on May 1, 1997.  Phillips alleged that he did not receive notice of the denial until August 29, 1997, almost four months later.  Upon receiving notice of the denial, he "with diligence and alacrity" filed for an out-of-time appeal within three days.  The Fifth Circuit held that Phillips would be entitled to equitable tolling of the four months at issue if, upon remand, he could meet his burden to establish that he had not in fact received notice of the denial in a timely fashion.  Phillips, 216 F.3d at 511.

---

[18]  Because the thirtieth day of the period fell on a Saturday, petitioner had until the following Monday, February 7, 2005, to file a writ application in the Louisiana Supreme Court.  See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

In support of his request for equitable tolling, petitioner notes that, after his writ application had been pending for a period of time, he wrote to the Louisiana Fourth Circuit Court of Appeal to inquire about its status.  On December 16, 2004, the court responded, saying that the application was still pending.[19]  Although the application was denied less than one month later, petitioner alleges that he received no notice of that denial.  He contends that he first learned of the denial when the court sent him a copy on June 18, 2007, presumably in response to another follow-up inquiry.[20]  While this Court is given pause by the fact that petitioner apparently waited so long to make the second inquiry, the Court nevertheless acknowledges that he did make attempts to track the status of his application.  Further, he acted with "diligence and alacrity" both after learning of the Court of Appeal's denial (by filing his untimely writ application with the Louisiana Supreme Court less than one month later) and after the Louisiana Supreme Court issued its denial (by filing his federal application a mere thirteen days later).  In light of the foregoing, and out of an abundance of caution, the undersigned recommends that petitioner be granted equitable tolling for the period of February 8, 2005, through May 2, 2008.[21]

---

[19]  Rec. Doc. 10, letter dated December 16, 2004.

[20]  Rec. Doc. 10, letter dated June 18, 2007.

[21]  It appears that petitioner would not be entitled to statutory tolling for the period of time the untimely writ application was pending before the Louisiana Supreme Court, in that the court's general rule is that such untimely filings are not normally allowed  and there is no indication that the court waived that rule as to petitioner.  See Butler v. Cain, 533 F.3d 314, 319 (5th Cir. 2008).  However, assuming that such statutory tolling would not be available, the undersigned finds that equitable tolling would be warranted.  To hold otherwise would render the period of equitable tolling to which petitioner is entitled under Phillips a purely illusory and meaningless benefit.

When the one-year period resumed running at that point, one hundred ten (110) days of petitioner's one-year limitations period remained.  Because he filed his federal application a mere thirteen (13) days later on May 15, 2008,[22] the undersigned finds that the application was timely filed and will therefore address the merits of petitioner's claims.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the

---

[22]   "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."   <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed his application on May 15, 2008, which is the earliest date he could have presented it to prison officials for mailing.

"unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

On the afternoon on March 7, 1996, Attorney J.T. Hill received a call from Kevin Jordan who was looking for work.  Jordan had done odd jobs for Hill in the past.  Hill agreed to find some jobs for Jordan and went to Canal Street in his green Ford Taurus to pick him up.  When Hill got there, Gerald Williams, previously unknown to Hill, was with Jordan.  Williams and Jordan took the vehicle from Hill after a struggle.  According to the testimony of Gerald Williams, he and Kevin Jordan and Dennis Comacha drove around in the Taurus for about three hours that afternoon, looking for Darnell Roussell.

On the evening of the next day, March 8, 1996, twelve-year-old Wendell McGuffey was trying to repair a mini-bike at 2920 Palmyra Street when he was shot in the head by Kevin Jordan, a passenger in the green Ford Taurus.  The victim died a day or two later from brain damage and loss of blood.  According to various witnesses, the shooting was directed at Darnell Roussell, but McGuffey was hit instead.  The shooting was believed to be in retaliation for the killing of a previous victim, Darryl Marshall.

Jordan was shot in the buttocks in that previous incident. At the time of the instant shooting, in addition to Jordan there was a driver and another passenger in the Taurus.

Shortly after the shooting, Roussell identified Kevin Jordan as the shooter and Dennis Comacha as the driver of the Taurus. At a subsequent photographic lineup he again identified Comacha as the driver, although at trial he stated he only identified who Camacha was and did not state that he was the driver. When asked who the driver was at trial, Roussell hedged and stated that it "looked like" Dennis, but it could have been Gerald (Williams). He also stated that there was a third person in the backseat "sticking up trying to see who I was."

Roussell also testified that the weapon fired by Jordan looked like a 9 mm. When questioned about a conversation with OIDP investigator Jerry Reed, Roussell testified that he stated only that he did not know who was driving.

A second eyewitness, Levar Rickmon, also identified Dennis Comacha as the driver of the Taurus. He also subsequently identified Comacha as the driver from a photographic lineup. He admitted at trial however that he only glanced at the car and didn't get a positive look, but he saw a flash of gold teeth on the driver and noticed he was wearing a hood. In addition, Rickmon admitted that he told OIDP investigator Reed that the defendant was not the driver of the vehicle when the shooting occurred. Rickmon also testified he did not see defendant in the car on the night of the shooting. He also testified the gun that was being used was a black revolver.

Comacha was asked by the defense to open his mouth and show his teeth to the jury. Further, the defendant stated that he had two gold teeth. The defense also asked Camacha and the defendant to stand next to each other, in an apparent attempt to show that the two men had similar appearances.

Jerry Reed, an investigator for the defendant, testified that he met with Roussell at his grandmother's house shortly after the shooting, at which time Roussell told him that Kevin Jordan was the shooter, and that the defendant was not the driver. At a meeting in the hallway prior to trial, Roussell maintained to Reed that the defendant was not in the car, and was not even in the area of the shooting.

The victim's cousin, Anthony McGuffey, was outside with Darnell Roussell and Levar Rickmon on the night of the shooting, but testified that he was too busy getting out of the way and so did not get a look at the driver or the passengers of the Taurus. However,

according to lead detective Michael Mims, Anthony McGuffey identified Kevin Jordan as the shooter when he was shown the photographic lineup at the grand jury hearing.

Based upon the identifications of Dennis Comacha as the driver, the police obtained a warrant for his arrest.  Following his arrest on March 12, 1996, Comacha identified the defendant in connection with the murder.  Det. Mims then obtained search and arrest warrants for the defendant. Upon execution of those warrants, the police found a chrome .38 caliber revolver under the defendant's pillow, which was later determined to be the murder weapon. Ballistics tests comparing pellets found at the crime scene revealed they were fired from the chrome revolver found in Talley's bedroom. The police also recovered from Talley's bedroom a box of .38 caliber bullets, but not the same type found in the autopsy and the murder scene.  In addition, the police seized starter jackets and caps that were similar to those described by witnesses as worn by the shooter and driver of the Taurus.  When arrested, the defendant told the police that whatever they found was his; his family had nothing to do with it.

Gerald Williams also testified at trial.  He admitted to being the backseat passenger when the shooting occurred.   He was permitted to plead guilty to manslaughter and received a ten-year sentence in exchange for his testimony.  Williams testified that, earlier in the day of the instant shooting, he and Jordan and Dennis Comacha were driving around in the car that he and Jordan had forcefully stolen from lawyer J.T. Hill the day before.  Williams further testified that, around seven or eight o'clock in the evening, they dropped off Comacha and picked up the defendant.  When they did that, Jordan went into the defendant's house to get him.  He testified that both Jordan and defendant had on starter jackets on the night of the shooting.  They then went looking for Sean (Johnson), because "he had another gun."  When they could not find Sean, they went on to Palmyra Street to look for Darnell. Williams further testified that he ducked down in his seat when he heard the shots ring out.

Dennis Comacha testified that he was arrested for the murder charge, but that he did not make a deal with the police.  He admitted to being in jail on a probation violation for an original offense of distribution of marijuana.  He denied ever seeing Kevin Jordan drive the Taurus, but admitted seeing Gerald Williams drive it.  He further admitted that he was in the Taurus earlier in the day on the day of the shooting.  He denied ever owning a gun like the murder weapon, or

any other gun.  Comacha invoked his Fifth Amendment rights when asked if he ever drove around with Kevin Jordan on March 7 in an attempt to shoot Roussell.  He also took the Fifth Amendment when questioned about the beating of J.T. Hill and theft of the Taurus.  As to the shooting of Wendell McGuffey, he testified that at the time of the shooting he was babysitting his younger brothers and little sister at his mother's house.

Kaneisha Earlycutt, the defendant's girlfriend, testified she and the defendant were at the defendant's mother's house on Governor Nicholls Street on the night of the shooting.  The defendant also testified that he was with Ms. Earlycutt and his mother on the night of the shooting.  He further testified that he got the gun from Dennis Comacha on March 9, 1996, the day after the shooting, in exchange for three bags of cocaine.  He testified that he previously owned a .38 caliber revolver to protect himself after being robbed three times.  He further testified that the police took the other gun so he was replacing it.  He testified that one of the starter jackets belonged to him, but the others belonged to other family members.[23]

### Ineffective Assistance of Counsel

Petitioner claims that his trial counsel, Dane Ciolino and Clyde Merritt, were ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

---

[23] State v. Talley, 748 So.2d 1184, 1186-88 (La. App. 4th Cir. 1999) (No. 98-KA-0282); State Rec., Vol. VII of X.

Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

      In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

      Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

In this proceeding, petitioner claims that his trial attorneys were ineffective in failing to (1) move for a mistrial when the prosecutor suggested that petitioner killed his brother-in-law, (2) call petitioner's mother as an alibi witness, and (3) inform petitioner of his right against self-incrimination.   After an evidentiary hearing, the state district court rejected those claims, holding:

> An ineffective assistance claim is assessed by the two prong test established in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, the defendant must show that counsel's performance was deficient, i.e. that he had mistakes so serious that he was not functioning as the counsel guaranteed to a defendant by the Sixth Amendment.  Secondly, one must show that the deficiency prejudiced him.  This showing can only be made if the defendant can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. At 693, 104 S.Ct. 2068.  If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel."  <u>State v. Bienemy</u>, 483 So.2d 1105 (La. App. 4th Cir. 1986).  Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions.  Neither may an attorney's level of representation be determined by whether a particular strategy is successful."  <u>State v. Brooks</u>, 505 So.2d 714, 724 (La. 1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
>
> Applicant's first assignment of deficient performance of counsel lies in their failure to move for a mistrial when, during cross-examination of Mr. Talley, the prosecutor suggested that Mr. Talley had shot his brother-in-law.  Mr. Ciolino handled Talley on direct examination and therefore was responsible for objections on cross-examination.  It was apparent from the testimony of Mr. Ciolino that he did not construe the colloquy between the prosecutor and the defendant to be suggestive of the defendant's participation in his brother-in-law's shooting. Equally important is that the Court did not perceive such an implication either.  Accordingly, had counsel moved for a mistrial, that motion would have been denied.  In sum, this Court does not conclude that counsel was deficient or that the defendant suffered any prejudice.
>
> As to the failure to call the defendant's mother as an alibi witness, Mr. Ciolino testified that this was a tactical decision.  He

believed that the prosecutor had so thoroughly discredited the defendant's first alibi witness that a similar performance would only weaken the defense's case in chief.  As discussed above, such a strategy, although maybe unsuccessful, cannot serve as the basis for an ineffective assistance claim.

   At the hearing, Mr. Talley also testified that neither attorney had discussed with him whether he should testify, and that he was instead simply thrust on to the witness stand without any preparation. This testimony was directly contradicted by the testimony of both Mr. Ciolino and Mr. Merritt, and the Court finds their testimony to be more credible.  This Court concludes that Talley was educated about his right to testify, his right to remain silent, and the dangers he faced should he elect to testify, and that he made the decision to testify.[24]

Petitioner's writ applications challenging that denial were denied by the Louisiana Fourth Circuit Court of Appeal[25] and the Louisiana Supreme Court.[26]

   Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision denying petitioner's ineffective assistance of counsel claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met and that, therefore, this federal court should defer to the state court's ruling.

---

[24] State Rec., Vol. I of X, Judgment dated January 23, 2004.

[25] State v. Talley, No. 2004-K-1794 (La. App. 4th Cir. Jan. 6, 2005) (unpublished); State Rec., Vol. VI of X.

[26] State ex rel. Talley v. State, 979 So.2d 1279 (La. 2008) (No. 2007-KH-1554); State Rec., Vol. VI of X.

With respect to petitioner's claim that his attorneys were ineffective in failing to move for a mistrial when the prosecutor suggested that petitioner killed his brother-in-law, Sean Johnson, that claim is based on the following exchange during petitioner's cross-examination:

Q.    And Sean Johnson is dead, isn't he?

A.    Yes, sir.  He got deceased on November 13, 1996.

Q.    He got shot up, didn't he?

A.    Yes, sir.

Q.    I'm curious about something.  Do you do a lot of target practicing?

A.    Target practicing?

Q.    Yeah.

A.    What kind of question is that?  Do I – no, I don't do no target practice.

Q.    With guns?

A.    No, sir.

Q.    The police got this from your house, right?

A.    Yes, sir.

Q.    You want to explain to the jury why all these bullets are missing out of this box?

A.    Why all those bullets missing?

Q.    Yeah.

A.     I really couldn't tell you that part, about why all those bullets
are missing.[27]

Petitioner opines that counsel should have objected to this "scurrilous insinuation

[sic] that the petitioner used his brother-in-law for target practice ...."[28]  However, as noted above,

neither petitioner's counsel nor the trial judge believed that any such insinuation could be inferred

from the exchange.  This Court agrees.  Although the point of the prosecutor's questions is unclear,

there is no basis for interpreting the questions as a veiled suggestion that petitioner shot and killed

Johnson.  Accordingly, the exchange simply afforded no basis for granting a mistrial and, therefore,

his attorneys were not ineffective for failing to request one.  See, e.g., United States v. Kimler, 167

F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the

basis of a successful ineffective assistance of counsel claim because the result of the proceeding

would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410,

415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark

v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective

lawyering; it is the very opposite.").

With respect to petitioner's claim that his lawyers were ineffective in failing to call

petitioner's mother as an alibi witness, that claim likewise has no merit.  It is clear that "complaints

of uncalled witnesses are not favored in federal habeas corpus review because allegations of what

the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th

---

[27]  State Rec., Vol. X of X, transcript of January 29, 1997, p. 81.

[28]  Rec. Doc. 3, supporting memorandum, p. 9.

Cir. 2002).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Id. (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In connection with the instant petition, counsel has provided no evidence whatsoever showing that his mother could have in fact provided petitioner with an alibi and would have testified to that fact at trial.

Moreover, even if the Court were to assume that petitioner's mother would have so testified, counsel still should not be considered ineffective for failing to call her.  The United States Supreme Court has cautioned courts not to second-guess counsel's strategic decisions through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.   There is a strong presumption that a decision regarding whether to call a witness is such a matter of trial strategy.  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); see also Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[P]resentation of testimonial evidence is a matter of trial strategy ....").  However, the Court need not resort to that presumption in the instant case, in that petitioner's counsel expressly testified at the evidentiary post-conviction hearing that his decision not to call the mother was in fact a tactical one, noting that he believed the prosecutor had discredited petitioner's first alibi witness and feared that the mother would be similarly discredited, thereby further weakening the defense's case.

Counsel is clearly allowed to make such decisions.  As the United States First Circuit Court of Appeals has explained:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.  The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.

Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted).  The court further noted:

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

Id.

The Court simply cannot say that counsel performed deficiently in opting not to call petitioner's mother as a second alibi witness where the potential benefit of calling her was small but the potential danger was grave.  On the one hand, a mother's alibi testimony would be inherently suspect at her son's murder trial.  See, e.g., United States ex rel. Emerson v. Gramley, 902 F.Supp. 143, 147 (N. D. Ill. 1995) (noting that petitioner's mother was an "interested witness" and, therefore, "would not have provided persuasive evidence of an alibi"), aff'd, 91 F.3d 898 (7th Cir. 1996).  Additionally, the mother's testimony would have been merely cumulative,[29] and a decision by counsel to forego presenting cumulative testimony does not constitute ineffective assistance.  See, e.g., Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir. 2007); Murray v. Maggio, 736 F.2d 279, 282

---

[29] Petitioner's girlfriend testified that, at the time of the shooting, petitioner was "[l]aying in the bed talking to me and his mama."  State Rec., Vol. X of X, transcript of January 29, 1997, p. 65.

(5th Cir. 2004).  On the other hand, the mother's testimony would potentially be damaging if she was discredited as counsel feared.

Nevertheless, even if it is *assumed* that counsel performed deficiently in this respect, petitioner's claim still fails because he cannot establish resulting prejudice.  In light of the other evidence at trial, the Court has no basis for finding that there is a reasonable probability that the result of the proceeding would have been different if only his mother, an inherently suspect alibi witness, had been called to testify.

Lastly, petitioner claims that his attorneys were ineffective in failing to inform him of his right against self-incrimination.  As noted previously, that issue was explored at the evidentiary post-conviction hearing, with petitioner testifying that he was not so informed and his two trial attorneys testifying that he was.  The judge expressly found the attorneys' testimony "more credible" and concluded that petitioner "was educated about his right to testify, his right to remain silent, and the dangers he faced should he elect to testify, and that he made the decision to testify."[30] Under the AEDPA, this federal court must defer to that state-court finding unless petitioner demonstrates that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Moreover, such state-court factual findings are *presumed* to be correct, and petitioner may be granted relief only if he rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Whitlock v. Dretke, 129 Fed. App'x 880, 881 (5th Cir. 2005) ("This presumption of correctness applies to explicit and implicit findings of fact which are necessary to the state court's conclusions of mixed law and

---

[30]  State Rec., Vol. I of X, Judgment dated January 23, 2004.

fact and to the state court's credibility determinations."). That presumption is "especially strong" where, as here, "the state habeas court and the trial court are one in the same."  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  In the instant case, petitioner simply has not met his burden.  He has offered no persuasive rebuttal to the state court's finding; rather, he essentially just invites this Court to substitute its own credibility judgments for those of the state court.  The Court cannot oblige.  See Marshall v. Lonberger, 459 U.S. 422, 434 (noting that federal courts do not have "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); see also Summers v. Dretke, 431 F.3d 861, 871 (5th Cir. 2005); Galvan v. Cockrell, 293 F.3d 760, 764 (5th Cir. 2002); Schmidt v. Hubert, Civ. Action No. 05-2168, 2008 WL 4491467, at *21 (W.D. La. Oct. 6, 2008).

In summary, the undersigned finds that state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

<u>Denial of Mistrial</u>

Petitioner next claims that his right to a fair trial was violated when the trial court denied his motion for mistrial.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> The appellant argues that the trial court erred in failing to
> grant a mistrial when the State elicited testimony regarding the

seizure of firearms that had been ordered suppressed.  The search of the defendant's residence resulted in the recovery of the Rossi chrome .38 caliber revolver under the defendant's pillow, which was subsequently determined to be the murder weapon.  In addition, the police recovered narcotics and a duffel bag that contained a black semi-automatic pistol and a sawed-off shotgun.  Following the hearing on the motion to suppress, the trial court ruled that only the murder weapon was admissible.  The State applied for a writ from this court.  On September 24, 1996, at 96-K-1989, this court denied that application.  On October 24, 1996, at 96-2558 (La. 10/24/96), 681 So.2d 347, the Louisiana Supreme Court also denied the State's writ application.

La.C.Cr.P. art. 771 provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Relevant evidence is defined at La. C.E. art. 401 "as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  However, the trial judge should exclude circumstantial evidence, even though logically

relevant, if its probative value is outweighed by the risk that its admission will consume too much time, unnecessarily confuse the jury concerning the issues to be determined, tend to excite emotions of the jury to the undue prejudice of the opponent, or unfairly surprise the opponent.  State v. Davenport, 445 So.2d 1190 (La. 1984); State v. Ludwig, 423 So.2d 1073 (La. 1982); La. C.E. art. 403.

In the instant case, the trial court and both reviewing courts concluded that the additional weapons were unduly prejudicial and inadmissible at trial.  However, appellant complains that the State impermissibly elicited testimony relative to the other weapons in the direct examination of Officer Lawless, who was asked to identify various State exhibits, as follows:

Q. State Exhibit No. 35?

A. It's a green duffel bag that was found in –

THE COURT:

Wait.  You can't ruffle the paper and talk at the same time.  Look at it and then identify it.

THE WITNESS:

(Witness complies.)  It's a green duffel bag that was found in Mr. Talley's bedroom, which contained some weapons.

BY MR. WOODS (Assistant D.A.) CONTINUED:

Q. And the final exhibit that I'm going to show you –

MR. CIOLINO:

Your Honor, can we approach for one minute?

Following the sidebar, the State asked no further questions about the weapons in the duffel bag.  Rather, the prosecutor continued questioning the witness regarding identification of the murder weapon.  The testimony was as follows:

BY MR. WOODS CONTINUED:

Q. Can you identify this weapon? Just say "yes or no"?

A. Yes, I can.

Q. What kind of weapon is it?

A. It's a Rossi .38 caliber weapon.

Q. Did you retrieve this from Mr. Talley's residence.

A. From?

Q. Yes.

A. Yes.

At the conclusion of Officer Lawless's testimony, outside the presence of the jury, the defense moved for a mistrial on the basis that Officer Lawless had referred to the additional weapons which had been ruled inadmissible.  The trial judge recalled that the State used a plural, but that the jury probably did not notice it, since subsequent questioning concerned only the murder weapon.  The trial court denied the mistrial, concluding that the jury probably did not notice Officer Lawless' testimony that "some weapons" were found in the duffel bag.

Defense counsel apparently did not request an admonition in this case.  In the instant case, defense counsel moved for a mistrial, apparently believing that an admonition would only call further attention to the inadmissible evidence.  Nevertheless, we find the trial court's denial of a mistrial was not erroneous.  The trial court's determination that the jury probably did not notice the plural used by Officer Lawless is reasonable, especially in light of the immediate continuation of his testimony following the sidebar which solely related to the murder weapon.  Further, although the duffel bag was identified at trial, the State did not offer it into evidence for viewing by the jury, and the record is insufficient to show that the State intentionally elicited the information about the contents of the bag from Officer Lawless.  Under the circumstances presented here, we conclude that Officer Lawless' testimony was not unduly prejudicial

to the defendant and that the trial court did not err in failing to grant a mistrial.

Moreover, even assuming the testimony was prejudicial and that the trial court erred in failing to grant a mistrial, we find this to be harmless error.

In State v. Corley, 93-1934, pp. 5-6 (La. 3/11/94), 633 So.2d 151, 154, cert. denied, 513 U.S. 930, 115 S.Ct. 322 (1994), the Louisiana Supreme Court discussed the harmless error rule, as follows:

> This Court has both the authority and the obligation to review the record de novo to determine an error's harmfulness. State v. Smith, 600 So.2d 1319 (La. 1992); see also Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In doing so, we must begin with the premise that the other, lawfully admitted evidence is sufficient to support the jury's verdict, Satterw[h]ite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The task of a reviewing court conducting a harmless error analysis is to determine whether the error contributed to the verdict or whether "the force of the evidence presumably considered by the jury in accordance with the instructions [of the court] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [error]." Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884, 1893-94, 114 L.Ed.2d 432 (1991).

We have carefully reviewed the entire transcript in this case and find that the evidence produced by the State indicates the verdict against defendant would have been the same without Officer Lawless' testimony. Although we recognize that the State's two eyewitnesses, in statements and photographic lineups shortly after the incident, initially identified Dennis Comacha as the driver of the vehicle from which the shots were fired, Darnell Roussell withdrew that identification at trial and stated that he was not sure who was driving the vehicle. Further, Levar Rickmon testified that he only got a glance at the vehicle and saw a flash of gold teeth on the driver of the vehicle. Although the record shows that Dennis Comacha had gold teeth, the defendant also had gold teeth. The jury could have

– 25 –

reasonably concluded that Roussell and Rickmon's initial identifications of the driver were erroneous, especially in light of the fact that shots were being fired from the car in their direction.

Further, the State produced the testimony of Gerald Williams, who admitted he was in the car on the night of the shooting and further stated that Henry Talley was the driver of the vehicle. Although Williams also testified that Comacha was with him and Kevin Jordan the day before the shooting when they rode around looking for Roussell, he stated that Comacha was not in the car on the night of the shooting. Comacha was originally charged as one of the perpetrators, but those charges were dropped when Comacha told the police that he got exited the vehicle before the murder.

In addition to Williams' testimony, the State also introduced evidence that defendant was in possession of the murder weapon, as well as starter jackets and caps which were similar to those worn by the perpetrators during the crime. The jury apparently chose to discredit the testimony of defendant, who stated he obtained the murder weapon after the shooting by trading Dennis Comacha for drugs. Rather, the jury apparently credited the testimony of Gerald Williams, the sixteen-year-old who admitted he obtained the vehicle with Kevin Jordan and was in the vehicle at the time of the shooting. Williams stated that defendant was the driver of the vehicle. We find the evidence introduced by the State, notwithstanding the testimony of Officer Lawless, proved defendant's guilt beyond a reasonable doubt.

This assignment has no merit.[31]

To the extent that petitioner is arguing that the state court erred in applying the state laws concerning the grant or denial of a mistrial, such a claim is not cognizable in a federal *habeas corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Further, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding. Federal *habeas corpus* relief

---

[31] Talley, 748 So.2d at 1188-90; State Rec., Vol. VII of X.

may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) ("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief."); Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.").

        Moreover, there is no basis for finding that petitioner's federal constitutional right to a fair trial was violated by Lawless' comment. A petitioner cannot be granted federal *habeas* relief on the ground that his trial was rendered fundamentally unfair by the erroneous admission of evidence unless that evidence played a crucial, critical and highly significant role in the trial. Lucas v. Johnson, 132 F.3d 1069, 1079 (5th Cir. 1998). Relief simply is not warranted where, as here, (1) the evidence at issue was an unresponsive, unanticipated, and fleeting remark made by a testifying witness, (2) the remark was not highlighted by further questioning, (3) defense counsel did not seek an admonishment or curative instruction for strategic reasons, and (4) there is no reason to believe that the remark had any impact on the conviction. See, e.g., United States v. Jackson, No. 98-31091, 1999 WL 706084, at *4 (5th Cir. Aug. 17, 1999).

## RECOMMENDATION

        Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ninth day of December, 2008.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**